WHITE & CASE

White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
T +1 212 819 8200

whitecase.com

June 30, 2021

**BY ECF**

The Honorable Edgardo Ramos
United States District Court, Southern District of New York
40 Foley Square
New York, NY 10007

Re:   *Amia Capital Macro Master Fund Ltd., et al., v. Province of Buenos Aires*, 21-cv-2488

Dear Judge Ramos:

We represent Plaintiffs, an ad hoc group of Buenos Aires noteholders, in the above-referenced action, and write in response to the Defendant Province of Buenos Aires' ("PBA") June 21, 2021 letter [ECF 12] ("Letter") requesting a pre-motion conference for permission to file a motion to dismiss counts IV-VI of the Complaint for lack of standing. Those counts cover three of the six note issuances at issue in this case. Plaintiffs have standing to sue on those notes for PBA's long-standing and uncontested defaults on its payment obligations. At a minimum, PBA's proposed motion raises a question of fact not subject to resolution on a motion to dismiss.

   A.   **Background**

Plaintiffs are beneficial owners under six series of Notes with an outstanding aggregate principal amount of more than $1.9 billion (the "Notes") issued by Defendant PBA. There is no dispute that PBA is in default of its obligations to Plaintiffs (and other holders of the Notes). Indeed, PBA has failed to make any of the principal or interest payments due on the Notes since April 2020. Although PBA references settlement discussions between the parties (Ltr. at 2-3), we note that the parties' discussions have not resulted in a resolution or even a single payment by PBA.

   B.   **Plaintiffs Have Standing To Assert The Claims In Counts IV-VI**

PBA argues that Plaintiffs lack standing to sue under the Notes at issue in Counts IV-VI because Plaintiffs cannot bring suit before the "stated maturity date," which PBA incorrectly asserts means the date for the final principal payments under those Notes. (Ltr. at 2) But that is not what Section 4.8 states. The Indenture does not define the "stated maturity date" as referring to the final principal payment, and PBA's inference that the word "maturity" cannot refer to interest payments and principal payments (other than the final one) is wrong. To the contrary, the interest payments and the principal payments have specific due dates/maturity dates expressed in the Notes, and the Indenture specifies that the due date of an interest payment is its "maturity."  *See* Compl. Ex. 1, Section 4.4 (providing a priority scheme for "payment of overdue interest . . . in the order of the *maturity of the installments of such interest*") (emphasis added). Additionally, when the parties

The Honorable Edgardo Ramos
June 30, 2021

**WHITE & CASE**

meant "final maturity," they stated so explicitly. (Compl. Ex. 1, § 3.6(b) ("which Indebtedness has a *final maturity*[.]") (emphasis added).  *See Gov't Emples. Ins. Co. v. Saco*, No. 12-CV-5633 (NGG) (MDG), 2015 U.S. Dist. LEXIS 43970, at *14-16 (E.D.N.Y. Apr. 2, 2015) ("New York case law has developed a general principle that where a contract uses similar, but not identical, language in different provisions, the use of different terms implies that the terms are to be accorded different meanings."); *Eastman Kodak Co. v. Altek Corp.*, 936 F. Supp. 2d 342, 355 (S.D.N.Y. 2013) (same).

Section 4.8 unambiguously provides each noteholder with an unconditional right to each payment of principal and interest, and explicitly grants each noteholder the right to sue to enforce "such payment."  Section 4.8's heading demonstrates that the scope of the provision covers both principal and interest: "Unconditional Right of Holders to Receive Principal and Interest."  The contract language then provides each noteholder with the right to sue for any payment that is not made when scheduled:  "each Holder . . . shall have the right, which is absolute and unconditional, to receive payment of the principal of and interest on . . . its Debt Security on the stated maturity date *for such payment* expressed in such Debt Security . . . and to institute suit for the enforcement of *any such payment*, and such right shall not be impaired without the consent of such Holder." (emphasis added).  Thus, Plaintiffs' unconditional right to payment specifically extends to outstanding principal payments and interest payments on the dates "expressed in such Debt Security"—and the Debt Security expresses dates for principal and interest payments—and the Holder's right to sue includes for any failure by PBA to make "any such payment."  PBA quotes a sentence fragment, ellipsing the emphasized key language: "on the stated maturity date *for such payment*," which refers to each principal and interest payment.  Compl. Ex. 1. § 4.8 (emphasis added).  PBA's interpretation then reads out of Section 4.8 Plaintiffs' right to sue for PBA's failure to make "any such payment."  *See MeehanCombs Glob. Credit Opportunities Master Fund, LP v. Caesars Entm't. Corp.*, 162 F. Supp. 3d 200, 210 (S.D.N.Y. 2015) (rejecting interpretation that would nullify term of the indenture because "[u]nder New York law, a contract should be read to give effect to all of its provisions, and courts should avoid interpretations that render contract terms meaningless or superfluous."); *Cortlandt St. Recovery Corp. v. Bonderman*, 31 N.Y.3d 30, 39 (N.Y. 2018) (same).

PBA also tries to support its position with a novel argument that Section 4.8's language granting noteholders the unconditional right "to receive payment of the principal of and interest on" the Notes means that any suit for recovery must be for all principal and interest and, therefore, any suit for recovery of interest cannot be brought until after the last principal payment comes due. (Ltr. at 3)  Again, the plain language of Section 4.8 is that holders shall have the "absolute and unconditional" right "to receive payment of the principal of and interest" as those payments are scheduled in the Notes, and can sue for a default on "*any* such payment," not for "*all* such payments only when the last principal payment is due."

PBA's interpretation of the Indenture is also unreasonable because it would allow PBA to remain in perpetual default on as many as 25 years' worth of interest payments, without a noteholder ever being able to bring a claim.  Indeed, PBA's interpretation would release PBA from its obligation to make most of its contractual payments.  Specifically, the Terms and Conditions of the Securities bar all claims against PBA for payment of interest unless made within "four years . . . from the

2

date on which such payment first became due, or a shorter period if provided by law." Compl. Ex. 1 at C-16, § 18. The series of Notes at issue all have final maturity dates for the final principal payment that are more than four years in the future. *See* Compl. at 15-17 (bringing claims under 2028 and 2035 Notes). Thus, if PBA was correct that a noteholder cannot sue until the maturity of the final principal payment (unless more than 25% of the noteholders instruct the Trustee to bring the claim), then all interest payments due more than four years prior to the final principal payment would be relieved. For instance, if Plaintiffs could not sue until the final maturity of principal payments under the 2035 Notes, the Notes' Terms and Conditions would bar recovery of interest payments due prior to 2031, relieving PBA of eleven years of interest payments, in violation of the Holders' "unconditional right" to receive all of their principal and interest payments and "to institute suit for the enforcement of any such payment." PBA's position is plainly incorrect. *See Aar Allen Servs. Inc. v. Feil 747 Zeckendorf Blvd LLC*, 2014 U.S. Dist. LEXIS 63159, at *10 (S.D.N.Y. May 6, 2014) ("[I]t is a well-established principle of New York contract law that a contract should not be interpreted to produce a result that is absurd, commercially unreasonable, or contrary to the reasonable expectations of the parties.") (internal citations omitted); *Platinum Equity Advisors, LLC v. SDI, Inc.*, 2016 NY Slip Op 50887(U), at *6 (N.Y. Sup. Ct. 2016) (same); *Nasdaq, Inc. v. Exch. Traded Managers Grp.*, 431 F. Supp. 3d 176, 233-34 (S.D.N.Y. 2019) (rejecting as "economically irrational" defendant's construction "to avoid the obligation to transmit payments[.]"); *IBM Credit Fin. Corp. v. Mazda Motor Mfg. (USA) Corp.*, 245 A.D.2d 78, 78 (N.Y. App. Div. 1st Dept. 1997) (rejecting interpretation which "made no economic sense for defendant and would have frustrated defendant's explicit central purpose in entering into the transaction[.]").

PBA's reliance on *Penades* is inapposite because *Penades* considered a different indenture, with different language. In *Penades*, the indenture did not provide a right to sue based on a failure to pay interest and principal on the dates "such payments" were due. *Penades v. Republic of Ecuador*, No. 15-cv-725 (RJS), 2016 U.S. Dist. LEXIS 136904, at *9-10 (S.D.N.Y. Sept. 30, 2016). Further, the *Penades* indenture referred to "maturity date" as being for principal, and the "interest payment date" as being for interest. *Id.* at *12 (citing *Penades* Indenture § 3.4(a)). The Indenture here refers to principal payments as payable on "principal payment date[s]," (Compl. Ex. 1, § 3.4(a), C-2 § 2(b)), and "maturity" is used for interest and principal. *Id.* § 4.4.

### C.  The Viability Of Counts IV-VI Cannot Be Determined On A Motion To Dismiss

Plaintiffs submit that their interpretation of the Indenture is the correct one. If the Court were to find that PBA's interpretation also was reasonable, however, then the contract would be ambiguous and not subject to resolution on a motion to dismiss. *See Orlander v. Staples, Inc.*, 802 F.3d 289, 295 (2d Cir. 2015) ("If a contract is ambiguous as applied to the facts that furnish the basis of the suit, a court has insufficient data to dismiss a complaint for failure to state a claim.") (internal citations omitted); *id.* at 297 ("As there are a number of reasonable interpretations of the relevant Contract provisions, they are ambiguous as a matter of law."); *U.S. Licensing Assocs. v. Rob Nelson Co.*, No. 11 CV 4517 (HB), 2011 U.S. Dist. LEXIS 136400, at *10 (S.D.N.Y. Nov. 28, 2011) ("Because [plaintiff's] reading is plausible, it would be inappropriate to resolve the ambiguity in the contract at the motion to dismiss stage.").



The Honorable Edgardo Ramos
June 30, 2021

Respectfully submitted,

*/s/ Glenn M. Kurtz*
**Glenn M. Kurtz**

**T** +2128198252
**E** gkurtz@whitecase.com

cc:   All Counsel Of Record (via ECF)

4

AMERICAS 107977341